T.C. Memo. 2010-230


UNITED STATES TAX COURT


CAROL D. ANDREWS, DECEASED, ROBERT ANDREWS, SUCCESSOR IN
INTEREST, AND ROBERT ANDREWS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23540-07.              Filed October 21, 2010.


Terri A. Merriam, Marlyn P. Chu, Jaret R. Coles, and Adam J.
Blake,[1] for petitioners.

Nhi T. Luu, for respondent.


MEMORANDUM OPINION

KROUPA, Judge:  This case is one of seven pending affected

item proceedings involving separate allocation of section 6662

---

[1]Marlyn P. Chu, Jaret R. Coles, and Adam J. Blake filed
motions to withdraw as petitioners' counsel.  We granted all
three motions.

accuracy-related penalties under section 6015(c) (separate liability allocation).[2]  The taxpayers in each of the pending cases were investors in Hoyt cattle partnerships subject to the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402, 96 Stat. 648.  The parties in each of the pending cases have agreed that this case and Malsom v. Commissioner, T.C. Memo. 2010-231, also filed today, will be used to present the penalty allocation issue to the Court.[3]

The parties filed a Stipulation of Settled Issues at trial that resolved all issues except the computation of petitioner's separate liability allocation.  The parties agree that Robert Andrews (petitioner) and his late spouse, Carol D. Andrews (Mrs. Andrews), are liable for the accuracy-related penalties for 1994, 1995 and 1996 (the years at issue) and they agree that petitioner is entitled to the separate liability allocation for each year at issue.  They also agree that the computational methodology

---

[2]All section references are to the Internal Revenue Code.

[3]The parties chose Andrews and Malsom because they represent two distinct scenarios.  The requesting spouse in Malsom is the spouse who earned the higher income during the years at issue while the requesting spouse here earned the lower income. Respondent's proposed methodology benefits the requesting spouse in Malsom but does not benefit the requesting spouse here. Nevertheless, the parties agree that the same computational methodology should be used in all cases for consistency.  We will therefore apply the same methodology in Andrews, Malsom, and the other pending cases.

established in Estate of Capehart v. Commissioner, 125 T.C. 211 (2005) (Capehart Estate methodology), should be applied to determine petitioner's separate liability allocations. There is no dispute as to the liability for each year at issue. The parties disagree, however, on how the liabilities and the penalties should be allocated when there are multiple sets of computational adjustments to petitioner's liability for each year. There are two sets of computational adjustments for each year because petitioner and Mrs. Andrews were partners in multiple TEFRA partnerships, the Tier 1 and Tier 2 partnerships, during the years at issue.[4] The Tier 2 partnerships were also partners in the Tier 1 partnership. Petitioners reported partnership losses from both the Tier 1 and Tier 2 partnerships on the joint returns for the years at issue.

The parties' disagreement focuses on the timing of the computations. Respondent's proposed computations make the Tier 1 and Tier 2 computational adjustments for each year in two

---

[4]Petitioner and his late spouse were partners in two partnerships, Durham Genetic Engineering 1984-2 and Durham Genetic Engineering 1985-4 (Tier 2 partnerships), during the years at issue. The Tier 2 partnerships were also partners in upper tier Hoyt partnerships (Tier 1 partnerships). Tier 1 partnership losses flowed through the Tier 2 partnerships to petitioner and Mrs. Andrews. Petitioner and Mrs. Andrews reported partnership losses from both the Tier 1 and Tier 2 partnerships on the joint returns for the years at issue.

separate steps.[5]  In contrast, petitioner's proposed computations make the Tier 1 and Tier 2 computational adjustments in one step. Applying the computations in one step as petitioner proposes results in one deficiency and one penalty for each of the years at issue.[6]  Applying the computations in two steps as respondent proposes results in two separate sets of deficiencies and penalties for each year.  The allocated amounts are also different when the computations are made in two steps rather than together in one step.  We agree with respondent that the computations for each TEFRA partnership must be made separately before the liabilities and penalties are allocated under the Capehart Estate methodology.

## I.  Separate Liability Allocation and Capehart Estate Methodology

We begin with an overview of separate liability allocation. Generally, taxpayers filing joint Federal income tax returns are jointly and severally liable for all taxes due.  See sec. 6013(d)(3).  A spouse (requesting spouse) may elect to have the liability limited to his or her proportionate share of the liability, however, if the spouses are divorced, legally separated, or living apart for the 12 months preceding the

_____

[5]Respondent's proposed computations result in allocated penalties of $369.50 for 1994, $791.60 for 1995 and $394.90 for 1996.

[6]Petitioner's proposed computations result in allocated penalties of $25.15 for 1994, zero for 1995 and zero for 1996.

election.  Sec. 6015(c)(1), (3)(A)(i).  The separate liability allocation must be made no later than two years after the Secretary has begun collection activities with respect to the electing spouse.  Sec. 6015(c)(3)(B).

Liability allocation is based on the items that gave rise to the deficiency (erroneous items).  Erroneous items are allocated to each spouse as though each had filed a separate return for the taxable year, subject to some exceptions.  Sec. 6015(d)(3)(A).  Erroneous items are reallocated under the tax benefit exception to the extent one spouse received a tax benefit on the joint return and the other spouse did not.  Sec. 6015(d)(3)(B).  The requesting spouse's proportionate share of the deficiency is based on his or her proportionate share of the erroneous items.  See sec. 6015(d)(1), (3)(A); sec. 1.6015-3(d)(4)(i)(A), Income Tax Regs.

The requesting spouse's allocable share of the accuracy-related penalty is based on his or her allocable share of the underpayment.  Sec. 1.6015-3(d)(4)(iv)(B), Income Tax Regs.  The underpayment is reduced, however, by the requesting spouse's share of excess withholding credits, estimated tax payments, and other payments that were frozen by the Commissioner instead of being refunded to the taxpayer.  See sec. 6664(a); Sec. 1.6664-2(a), (d), Income Tax Regs.  The requesting spouse's share of the underpayment is then multiplied by 20 percent to determine his or

her allocable share of the accuracy-related penalty.  Capehart
Estate, supra at 225-226.

II.  Applying the Computational Adjustments

We now turn to the parties' proposed computations of
petitioner's separate liability allocation.  Petitioner claims
that the amount of the liability should be the same regardless of
whether the computational adjustments are made in one step or
multiple steps.  He analogizes the assessment of computational
adjustments in TEFRA proceedings to the computation of tax
deficiencies to support his claim.  We note, however, that normal
deficiency procedures do not apply to computational adjustments.
Sec. 6230(a)(i); see sec. 6230(a)(2)(A).  We do not find
petitioner's analogy helpful.

Petitioner's proposed computations also ignore the
partnership procedures set forth in TEFRA.  See secs. 6221
through 6231.  The TEFRA rules provide for separate proceedings
at the partner and partnership levels.  See GAF Corp. & Subs. v.
Commissioner, 114 T.C. 519, 524 (2000).  The computational
adjustments at issue stem from separate partner and partnership
level proceedings.  The Tier 1 computational adjustments are
partnership-level adjustments and the Tier 2 computational
adjustments are partner-level adjustments of Tier 1 partnership
items.  Accordingly, the TEFRA rules require that the Tier 1

partnership-level computational adjustments be made separate from the Tier 2 partner-level computational adjustments.

Petitioner's proposed computations also ignore the 1-year limitation on making computational adjustments. See sec. 6229(a), (d). Decisions were finalized in the Tier 1 partnership proceedings in 2005, or almost a year before the decisions were finalized in the Tier 2 partnership proceedings. The Tier 1 computations must therefore be made before the Tier 2 computations to comply with the Tier 1 limitations period.

III. Applying the Capehart Estate Methodology

We now turn to the application of the Capehart Estate methodology to make the separate liability allocation. We have already determined that the Tier 1 and Tier 2 computations for each taxable year should be made separately and the Tier 1 computations should be made first. The Capehart Estate methodology should also be applied separately to each set of computations. This means that the tax benefit exception should be applied twice. The tax benefit exception should be applied once at the Tier 1 partnership level and again at the Tier 2 partnership level.

Petitioner's proposed computations, however, apply the tax benefit exception only to the Tier 1 erroneous items and ignore the tax benefits petitioner received from the Tier 2 Hoyt income and partnership losses. We find that respondent's proposed

computations properly apply the tax benefit exception separately to the Tier 1 and Tier 2 erroneous items.

IV.  Allocation of the Penalties

We now turn to the allocation of the penalties.  We find that the accuracy-related penalties, which are based on the Tier 1 and Tier 2 underpayments, must also be separately allocated for each set of computations.  We further find that respondent's computations properly account for frozen refunds before separately allocating the Tier 1 and Tier 2 penalties.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

An appropriate order will be issued.